IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEGGY BOUCHER,<br>Individually, and as the<br>Administratrix of the Estate<br>of Sean Bohinski, | :<br>:<br>:<br>:<br>: |
| Plaintiff, | :  3:19-CV- 2106<br>:  (JUDGE MARIANI) |
| v. | :<br>: |
| AARON LUPACCHINI, | :<br>: |
| Defendant. | : |

## MEMORANDUM OPINION

Presently before the Court is Defendant Aaron Lupacchini's motion for summary

judgment and Plaintiff Peggy Boucher's motion for partial summary judgment. (Docs 69,

76). After review of the claims and factual record, the Court identifies genuine disputes of

material facts. Accordingly, the parties' motions for summary judgment will be denied.[1]

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Peggy Boucher, individually and as the Administratrix of the Estate of her

son Sean Bohinski ("Bohinski" or "decedent"), initiated this wrongful death and survival

action in the Luzerne County Court of Common Pleas on October 18, 2019. (Doc. 1-2).

Plaintiff's Complaint (the "Complaint") asserted federal claims pursuant to 42 U.S.C. § 1983

---

[1]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

and state law claims under Pennsylvania law against multiple state Defendants. On December 11, 2019, Defendants removed the action to this Court. (Doc. 1).

On February 17, 2020, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 9). This Court referred the motion to Magistrate Judge Carlson, who issued a Report & Recommendation recommending that Defendants' motion to dismiss should be granted. (Doc. 29). Over Plaintiff's objections, this Court adopted Magistrate Judge Carlson's Report & Recommendation on April 14, 2022. (Doc. 43). After adopting Magistrate Judge Carlson's Report & Recommendation, the only defendant remaining was Defendant Aaron Lupacchini ("Defendant" or "Lupacchini").

On July 29, 2024, Defendant filed the instant motion for summary judgment. (Doc. 69). Defendant asserts he is entitled to summary judgment on Plaintiff's Section 1983 claims asserting excessive force and unreasonable seizure in violation of the Fourth Amendment on the basis of qualified immunity. Defendant further claims he is entitled to summary judgment on Plaintiff's state law claims for battery, false arrest, wrongful death, and survival actions based on sovereign immunity because he was acting within the scope of his employment at the time of the alleged harms and therefore cannot be liable under any state law claims. (Doc. 71). On August 29, 2024, Plaintiff filed a motion for partial summary judgment. (Doc. 76).

## II.    STATEMENT OF FACTS

On October 24, 2017, Defendant, a Waterways Conservation Officer with the Pennsylvania Fish & Boat Commission, "was conducting a patrol near Canal Park on the Susquehanna River near Nanticoke in Luzerne County" Pennsylvania. (Doc. 77 at ¶ 1).[2] Lupacchini, a uniformed officer with the Pennsylvania Fish & Boat Commission patrolled the Susquehanna River in Plymouth Township, Pennsylvania at approximately 1:30 P.M. (Doc. 70 at ¶ 1).[3] He testified that he was familiar with this area from prior patrols. (DSOMF at ¶ 2).

When Defendant arrived at this area, he smelled a fire. (PSOMF at ¶ 2). Defendant subsequently left his vehicle and walked along a trail near the river, where he saw Plaintiff's decedent, Bohinski, near a fire carrying a machete and a pair of binoculars (*Id*. at ¶ 3). Bohinski denied that he started the fire and claimed he was trying to put it out. (*Id*.). "It is not illegal to start, build, or tend a campfire with a landowner's permission."[4] (*Id*. at ¶ 4). Defendant testified that he "can't say with certainty" if he asked Bohinski if he had the landowner's permission to have a fire at the location, and further testified that he did not contact the landowner on this subject. (*Id*.).

---

[2]    Document 77 is Plaintiff's Statement of Material Facts ("PSOMF").

[3]    Document 70 is Defendant's Statement of Materials Facts ("DSOMF")

[4]    The parties dispute whether Bohinski was tending to the fire and whether the fire was a violation of Pennsylvania's Fish & Boat Code, 30 Pa. C.S.A. § 2501(a)(3).

Defendant testified that Bohinski refused to make eye contact with him. (DSOMF at ¶ 23). Defendant "believed that Bohinski was prodding wire in a campfire" in what he believed was an attempt to burn off the insulation. (*Id.* at ¶ 14). It is undisputed that Bohinski "made no motion towards Lupacchini with the machete, showed no aggression toward Lupacchini at this point, and immediately dropped the machete when Lupacchini instructed him to do so." (PSOMF at ¶ 5); (DSOMF at ¶ 24).

However, Defendant testified that he believed Bohinski was being deceptive. (DSOMF at ¶ 28). And he further testified that when he asked Bohinski for identification he did not have it on him. (*Id.* at ¶ 29). Defendant claims that when he asked Bohinski for his name, he told Defendant that his name was Steve Grabowski, (*Id.* at ¶ 31), which Defendant believed to be false information. (*Id.* at ¶ 32). Moreover, Defendant testified that when he asked Bohinski for his address, Bohinski replied "Hanover Township." (*Id.* at ¶ 34).

Defendant then "conducted a pat-down" of Bohinski." (PSOMF at ¶ 6). According to Defendant, he performed a physical pat-down of Bohinski "because of safety reasons and because he believed criminal activity was afoot." (DSOMF at ¶ 35). Specifically, he testified that he wanted to conduct a Terry Frisk because he "was aware of at least one machete on the ground" and "was certain Bohinski was lying to him regarding his name, address and his intentions" with the fire." (*Id.*). Defendant claims that he found a pocket knife in Bohinski's pocket during the pat-down however, "the pocket knife was not found at the scene of the incident." (PSOMF at ¶ 7). Defendant further "claims that he felt a small

4

cylinder like a film canister in Mr. Bohinski's pocket," which he believed to contain drugs. (*Id.* at ¶ 8). However, Defendant "never actually saw the canister-like object, never asked Mr. Bohinski what was in it" and, like the pocket knife, "it was not found at the scene of the incident and was never found during the autopsy" (although many other objects were found in Bohinski's pockets). (*Id.*).

At this point, Defendant testified that he attempted to place Bohinski in handcuffs for both of their safety. (DSOMF at ¶ 40). He further testified that Bohinski resisted the restraints. (*Id.* at ¶ 41). Defendant then "removed his handcuffs, at which point Bohinski ran away from him, striking him in the face in the process." (PSOMF at ¶ 9). Defendant testified that he "cannot say if Mr. Bohinski struck him intentionally or while flailing his arms as he ran." (*Id.*).

Defendant then "pursued Mr. Bohinski to the Susquehanna River" where Defendant subsequent slipped on a rock, fell, and hit his face.[5] (PSOMF at ¶ 10); (DSOMF at ¶¶ 43-45). After this incident, Defendant "could not get his radio to work." (DSOMF at ¶ 46). Defendant then "dove at Mr. Bohinski but missed, after which Mr. Bohinski moved further into the river, while Lupacchini stopped pursuing him and moved back to the shore." (PSOMF at ¶ 10). Defendant "claims that he attempted to convince Mr. Bohinski to come

---

[5]     Defendant further observed that the Susquehanna River was below normal water levels. (DSMOF at ¶ 5). Defendant "knew that water depths in the Susquehanna River can change from inches to high depths of water." (*Id.* at ¶ 7). He further "knew that there are many rocks in the Susquehanna River." (*Id.* at ¶ 8). Specifically, Defendant "knew that there are moss covered rocks in the Susquehanna River, making it slippery." (*Id.* at ¶ 9).

back to shore, and eventually Mr. Bohinski did so." (*Id.* at ¶ 11). Defendant further testified that he was concerned for Bohinski's safety because he was in the "laminar flow of the river, the main current of the river." (DSOMF at ¶ 48). According to Defendant, he guided Bohinski to a rock to sit down on and both he and Bohinski were seated on a rock in the river close to shore. (*Id.* at ¶¶ 49-50).

Defendant then "told Mr. Bohinski that he had 'to give you some tickets' and that they had to go to the State Police barracks, at which point Mr. Bohinski ran back into the river." (PSOMF at ¶ 12). According to Defendant, "he pursued Mr. Bohinski into the river, and the two struggled, with Lupacchini kneeing and kicking Mr. Bohinski." (*Id.* at ¶ 13). Bohinski was taller than Defendant Lupacchini, although the parties dispute who weighed more. (DSOMF at ¶ 19). At some point, Defendant slipped again and fell in the river and was stumbling as he attempted to grab Bohinski. (*Id.* at ¶¶ 55-57). Defendant further testified that he and Bohinski engaged in a physical struggle in the river, that both he and Bohinski's heads were submerged in water, and that he inhaled water into his lungs. (*Id.* at ¶¶ 58-59).

Eventually, Bohinski was on his back in a shallow rocky area, and Defendant claims he was straddling him in an attempt to gain control. (PSOMF at ¶ 14). At this point, Defendant claims that Bohinski "struck him in the head with a rock." (*Id.*). Defendant was unable to overpower Bohinski, so he tried to release Bohinski and let him go. (*Id.* at ¶ 15). Defendant testified that he was struck in the head by decedent "with a river rock several times" to the point where he "had blood running into his eyes." (DSOMF at ¶¶ 61-62).

Defendant further testified that he ordered Bohinski to stop resisting and that he was under arrest, to which Bohinski responded "no." (*Id.* at ¶¶ 63-64). At this point, Defendant testified that he felt dizzy, nauseous, and "wet, cold, bloodied" and that his vision was impaired. (*Id.* at ¶¶ 65-66). Defendant claims that he knew he was going to lose consciousness at any point. (*Id.* at ¶ 67).

"According to Lupacchini, Mr. Bohinski continued to advance toward him with a rock in his hand." (PSOMF at ¶ 16). Defendant then "shot Mr. Bohinski three times, killing him." (*Id.* at ¶ 17). More specifically, Defendant "drew his firearm" and then "shot Bohinski three times one-handed with his firearm from a close distance." (DSOMF at ¶¶ 75-76). Bohinski was pronounced dead at the scene. (*Id.* at ¶ 89). Defendant "never called for backup or otherwise contacted local law enforcement prior to killing Mr. Bohinski." (PSOMF at ¶ 18). Defendant further "admitted that it would have been reasonable to call for backup after he first attempted to apprehend Mr. Bohinski in the river "[i]f the thought had crossed [his] mind." (*Id.*).

After the shooting, Defendant secured Bohinski in handcuffs and placed him face-up on a rock. (DSOMF at ¶¶ 77-78). Defendant claims that he thought he had a concussion, recognized signs that hypothermia was setting in, and further "sat down on the shore and lost consciousness." (*Id.* at ¶¶ 80-84). After initially being unable to find his vehicle, Defendant claims that after he regained consciousness he was able to find his vehicle and call for help. (*Id.* at ¶ 85). A civilian stopped and attempted to render aid to Defendant, who

7

was bleeding from his head.  (*Id.* at ¶¶ 86-87).  Defendant was then treated for injuries at the hospital.  (*Id.* at ¶ 88).  It is disputed whether Defendant's injuries were the result of slipping on the river rocks and hitting his head/face, or the result of decedent's alleged striking Defendant with a rock.

"Mr. Bohinski's autopsy found that one of the bullets Lupacchini fired passed through Mr. Bohinski's right forearm.  (PSOMF at ¶ 19).  The autopsy results further found methamphetamine present in Bohinski's system.  (*Id.* at ¶ 20).  The parties agree that the entire encounter between Defendant and decedent, from initial contact until the deadly shooting, could be "measured in minutes."  (DSOMF at ¶ 97).

Moreover, several police officers tasked with investigating the shooting of Bohinski provided testimony.   None of those officers was present at the scene at the time of the shooting or witnessed the shooting.  Thomas Edwards, Jr. a corporate representative of Pennsylvania's Fish & Boat Commission testified regarding what could be seen as the failure to thoroughly investigate the shooting of Bohinski.  (Doc. 82-5).  More specifically, the failure to investigate or ask Defendant any questions about the rock Bohinski was allegedly holding at the time of the incident.  *Id.* (Q: "Mr. Bohinski could have had a pebble in his hand or something that could have not have hurt him, therefore, the shooting wouldn't have been justified but they never asked that question, is that fair?"  A:  "Yes, sir.").

It is undisputed that the rock allegedly used by Bohinski to strike Defendant was never recovered from the scene and there is nothing in the record containing a description

8

of the alleged rock. It is undisputed that Bohisnki's alleged pocket-knife and film canister (which Defendant suspected contained drugs) were never recovered from the scene. It is further undisputed that all three bullet casings were recovered from the scene, and that the machete was recovered and located several hundred yards from the scene of the shooting, near the location of Defendant and Bohinski's initial encounter. (Doc 82-8 at 4). And it is undisputed that neither party submitted a cell phone video from a third party which apparently captures some, but not all, of the encounter between Defendant and decedent.

## III.   STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

Where, as here, the Court is "confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 187 F. App'x 266, 270 (3d Cir. 2006). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of

material fact exist." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008)

(internal citation and quotation marks omitted).

## IV.    ANALYSIS

In the Complaint, Plaintiff asserts various claims pursuant to 42 U.S.C. § 1983 and

further raises state law claims under Pennsylvania law.  The Court will address each in turn.

### A. Section 1983 – Fourth Amendment Claims

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate the

violation of a right protected by the Constitution or laws of the United States, committed by a

person acting under color of state law.  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en

banc).  Section 1983 is not in itself a source of substantive rights, instead providing a

remedy for violations of rights protected by other federal statutes or by the U.S. Constitution.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Therefore, in evaluating a § 1983 claim, a Court must "'identify the exact contours of the

underlying right said to have been violated'" and determine "whether the plaintiff has alleged

a deprivation of a constitutional right at all."  *Nicini*, 212 F.3d at 806 (quoting *Cnty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L Ed. 2043 (1998)).  In

the instant matter, Plaintiff's claims against the Defendant arise under the Fourth

Amendment to the United States Constitution.

In Count III of the Complaint, Plaintiff asserts Fourth Amendment excessive force

claims against Defendant Aaron Lupacchini in connection with his conduct on October 24,

2017, namely, his initial seizure of Bohinski and his subsequently shooting Bohinski dead. Defendant seeks summary judgment on Counts III on the basis of qualified immunity. As an initial matter, there is no doubt that the Defendant acted under color of state law within the meaning of § 1983. *See Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (holding that defendant police officers were state actors because "[t]hey clearly invested with the power and authority of the state"). Thus, the question becomes whether the facts viewed in the light most favorable to Plaintiff, could lead a reasonably jury to conclude that Defendant deprived Bohinski of his federal constitutional rights. And, if so, whether the Defendant is nevertheless entitled to qualified immunity.

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). Courts must "perform[] a two-step inquiry to determine whether a particular government official is entitled to summary judgment based on qualified immunity." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). First, the Court must consider whether the facts, viewed in the light most favorable to the non-moving party, show that a state official violated a constitutional right. *Id.* Next, the Court asks, "whether that right was clearly established at the time of the official's action." *Id.* Where, as here, a Plaintiff asserts an excessive force claim, there are "more particularized requirements." *Id.* Specifically, the Court must determine "whether a constitutional violation

has occurred using the Fourth Amendment's objective reasonableness test." *Id.* This requires the Court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id.* (internal citation and quotation marks omitted).

**Violation of Bohinski's Constitutional Rights – Unreasonable Seizure**

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . searches and seizures." U.S. Const. Amend. IV. "The Fourth Amendment applies to seizures in civil, as well as criminal, proceedings" and "the fundamental inquiry in such proceedings . . . remains whether the government's conduct is reasonable under the circumstances." *Doby v. DeCrescenzo*, 171 F.3d 858, 871 (3d Cir. 1999) (citations omitted).

With respect to the Defendant's *Terry* stop and frisk of Bohinski, the Court must address whether the Defendant seized Bohinski within the meaning of the Fourth Amendment. *See Kaupp v. Texas*, 538 U.S. 626, 629, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (holding that a seizure occurs when, "taking into account all the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.") (internal citation and quotation marks omitted). Viewing the facts in the light most favorable to the Plaintiff, a reasonable jury could conclude that Defendant seized Bohinski within the meaning of the Fourth Amendment. "Generally, whenever a police officer accosts an

individual and restrains his freedom to walk away, he has 'seized' that person." *Couden v. Duffy*, 446 F.3d 483, 494 (3d Cir. 2006); *see also Torres v. Madrid*, 592 U.S. 306, 141 S.Ct. 989, 209 L.Ed.2d 190 (2021) (application of physical force to the body of person with intent to restrain is Fourth Amendment seizure even if the person does not submit and is not subdued). The question then becomes whether the Defendant's initial seizure of Bohinski was reasonable under the circumstances.

"Under *Terry v. Ohio* . . . 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Valentine*, 232 F.3d 250, 253 (3d Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 120, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* "And in evaluating reasonable suspicion, we must consider the totality of the circumstances—the whole picture." *Id.*

"To justify an investigative detention in the first instance, a police officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Vasquez v. Sailsbury Twp.*, No. Civ. A. 98-2955, 1999 WL 636662, at *5 (E.D. Pa. Aug. 19, 1999) (quoting *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reasonable suspicion, however, "does not require that the suspect's acts must always be themselves criminal." *Valentine*, 232 F.3d at

356. It is well-settled that "reasonable suspicion cases are inherently fact-based." *Couden*,
446 F.3d at 497.

Viewing the facts and inferences in the light most favorable to the Plaintiff, a
reasonably jury could infer that Defendant, based on the totality of the circumstances,
lacked reasonable suspicious to conduct an investigatory stop and frisk of decedent for his
alleged violation of 30 Pa. C.S.A. § 2501(a)(3). It is undisputed that decedent dropped the
machete he was using to apparently tend to the fire immediately upon Defendant's
command. It is further undisputed that there is no evidence in the record that the area is a
high-crime area and the encounter between Defendant and the decedent occurred during
day-time hours. And there is a factual dispute as to whether Defendant asked the decedent
if he had the landowner's permission—a necessary element for a summary offense
violation. In addition, **none** of the objects Defendant claims to have encountered during the
*Terry* stop and frisk of decedent (a pocket-knife and film canister) were ever recovered from
the scene, although authorities recovered numerous objects from decedents pockets at
autopsy. Although Defendant asserts that he had reasonable suspicion to detain decedent
based on his apparent violation of the Fish & Bote Code, general evasiveness, lack of eye
contact, among other things, it is not the Court's position to weigh competing facts and the
inferences from those facts. Those facts must be resolved by a jury in order to determine
whether the initial seizure of Bohinski was reasonable or unreasonable based on the totality
of the circumstances.

## Violation of Bohinski's Constitutional Rights – Excessive Force

The Court next addresses whether a reasonable jury could infer that Defendant's conduct in shooting decedent dead amounts to excessive force in violation of the Fourth Amendment. "[T]he first step of the analysis addresses whether the force used by the officer was excessive, and therefore violative of plaintiff's constitutional rights, or whether it was reasonable in light of the facts and circumstances available to the officer at the time." *Curley*, 499 F.3d at 207. "This is not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity."[6] *Id*.

It is well settled that "[u]se of excessive force by a state official effectuating a search or seizure violates the Fourth Amendment." *Estate of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). A police officer seizes a person whenever he or she "restrains the freedom of a person to walk away." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985).

With respect to Defendant's subsequent shooting of Bohinski, there can be no question that the Defendant seized Bohinski within the meaning of the Fourth Amendment.

---

[6]     There is no requirement that the Court address each step of the analysis in sequence. *See Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (courts need not first determine whether facts alleged or shown by the plaintiff make out a violation of a constitutional right and may address whether the right at issue was clearly established).

16

*See Garner*, 471 U.S. at 7 ("There can be no question that apprehension by use of deadly

force is a seizure subject to the reasonableness requirement of the Fourth Amendment.");

*see also Kaupp*, 538 U.S. at 629. The question then becomes whether the Defendant's use

of deadly force to seize Bohinski was reasonable under the circumstances.

In order to determine whether the force used was objectively reasonable, the Third

Circuit instructs district courts to consider:

> The severity of the crime at issue, whether the suspect poses an immediate threat to
> safety of the officers or others, and whether he is actively resisting arrest or attempting
> to evade arrest by flight . . . [whether] the physical force applied was of such an extent
> as to lead to injury . . . the possibility that the persons subject to the police action are
> themselves violent or dangerous, the duration of the action, whether the action takes
> place in the context of effecting an arrest, the possibility that the suspect may be
> armed, and the number of persons with whom the police officers must contend at one
> time.

*Sharrar v. Felsing*, 128 F.3d 810, 821-22 (3d Cir. 1997), *abrogated on other grounds in*

*Stetser v. Jinks*, 572 F. App'x 85 (3d Cir. 2014). Put another way, the reasonableness

inquiry, which is "highly individualized and fact specific" should be principally guided by

three factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an

imminent threat to the safety of the police or others in the vicinity, and (3) whether the

suspect attempts to resist arrest or flee the scene." *Santini*, 795 F.3d at 417 (citing *Graham*

*v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1965, 104 L.Ed.2d 443 (1989)). The Court must

evaluate the objective reasonableness of the force used "in light of the totality of the

circumstances" which are analyzed "from the perspective of a reasonable officer on the

scene, rather than with the 20/20 vision of hindsight, making allowance for the fact that

police officers are often forced to make split-second judgments—in circumstances that are

tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

particular situation." *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016)

(internal citation and quotation marks omitted).

In considering whether the force used by the Defendant in the instant matter was

objectively reasonable under the circumstances, the Court notes that it is well-settled that

"[t]he reasonableness of the use of force is normally an issue for the jury." *Rivas v. City of*

*Passaic*, 365 F.3d 181, 198 (3d Cir. 2004); *accord Abraham*, 183 F.3d at 290

("[R]easonableness under the Fourth Amendment should frequently remain a question for

the jury."). The Court finds that, viewing all facts and inferences in the light most favorable

to the Plaintiff, a reasonable jury could find that Bohinski's constitutional rights were violated

by both a *Terry* stop and frisk lacking reasonable suspicion and his subsequent deadly

shooting, which were objectively unreasonable under the totality of the circumstances.

First, the severity of Bohinski's crimes, or lack thereof, weighs in his favor. The

entire premise of the investigatory stop, which escalated into the subsequent shooting was

based on a violation of Pennsylvania's Fish & Bote Code. Specifically, Defendant initial

seizure of Bohinski related to an alleged summary offense violation for tending a fire without

the landowner's permission, 30 Pa. C.S.A. § 2501(a)(3). However, there is a genuine

material factual dispute as to whether the decedent even committed this summary offense,

or whether Defendant had reasonable suspicious to detain decedent. For example, there is

a material factual dispute as to whether Defendant asked decedent if he had the landowner's permission – a necessary element of the summary offense at issue.[7] Moreover, it is apparent that the crime, or lack thereof, at issue was not a violent crime and certainly not a felony or misdemeanor. Rather, it was a summary offense whose penalty is a $75 fine.

Second, there is a material factual dispute with respect to whether Bohinski posed an imminent threat to the safety of the Defendant or any other person in the vicinity, such that his investigatory stop and shooting were justified under the circumstances. Viewing all the facts and inferences in the light most favorable to Plaintiff, a reasonable jury could conclude that Bohinski did not pose an imminent threat to the safety of the Defendant, such that his shooting was not justified under the circumstances. For example, a reasonable jury could infer that Defendant's recollection is not entirely credible given his admitted physical and mental state after slipping and falling on the rocks and chasing Bohinski into the river. Moreover, a reasonable jury could infer that, based on the failure to recover the rock with which Defendant's alleges the decedent struck him with, the conflicting testimony, and the failure to provide any testimony concerning the size of the alleged rock at issue, that

---

[7]    30 Pa. C.S.A. § 2501(a)(3) provides that:

   (a) It is unlawful for any person to commit any of the following acts in or along any waters or lands adjacent to or contiguous to waters within or bordering on this Commonwealth: . . . (3) Start, build, tend or abandon any open fire without the permission of the owner or lessee of the land.

   *Id.*

Defendant's actions were unreasonable under the circumstances. Notably, the fact that decedent's autopsy revealed he had been shot through the arm could support an inference that at the time of the deadly shooting, Defendant did not reasonably fear for his life because any alleged rock held by Bohinski was not raised above his head, as Defendant testified, and thus the shooting was objectively unreasonable.[8] *See Abraham*, 183 F.3d at 293 ("Based on that physical evidence, a reasonably jury could reject the witnesses' recollection as inaccurate."). Indeed, Lieutenant Colonel Thomas J. Burrell of the Pennsylvania State Police testified that, based on the autopsy, the decedent had his arm across his chest or in front of him in some manner when he was shot. (Doc. 82-3 at 4). He further testified that it was possible that Defendant injuries were self-sustained as a result from falling and slipping on multiple occasions. (Doc 82-3 at 16).

"Cases that turn crucially on the credibility of witness' testimony in particular should not be resolved on summary judgment." *Abraham*, 183 F.3d at 28; *see also Duvall v. Hustler*, 447 F. Supp. 3d 311, 327 (E.D. Pa. 2020) (noting that "[t]his circumstantial evidence—that is, the absence of a gun—creates a genuine dispute of material fact as to the credibility of the officers' entire account of the shooting."). As the Third Circuit

---

[8]    In addition, as Plaintiff notes, multiple law enforcement officers and PFBC representatives admitted in their depositions that no one investigated how many times Defendant was allegedly struck, how his injuries actually occurred (from decedent of from his own fall), the manner in which decedent allegedly struck Defendant, the manner in which decedent allegedly attacked Defendant and/or the size of the alleged rock at issue. *See* Docs. 82-2, 82-3, 82-6, 82-7, 82-9, 82-10. Moreover, Defendant's written statement is lacking any information regarding the rock and how decedent allegedly wielded the rock. (Doc. 82-1). PFBC corporate designee testified that these are important questions that should have been asked to determine the reasonableness of Defendant's shooting of Bohinski. (Doc. 82-4).

recognized in *Bennett v. Murphy*, 274 F.3d 133, 137 (3d Cir. 2002), a police officer is not "precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff," but such a "contention, however, must be considered at trial." *Id.*; *see also Abraham*, 183 F.3d at 289 ("reasonableness under the Fourth Amendment should frequently remain a question for the jury"). Here, as in *Abraham*, "[c]onsidering the physical evidence together with the inconsistences in the officer's testimony, a jury will have to make credibility judgments, and credibility determinations should not be made on summary judgment." *Id.* at 294. And, as here, "since the victim of deadly force is unable to testify, courts should be cautious on summary judgment to ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify." *Id* (internal citation and quotation marks omitted).

Third, there is a material factual dispute regarding the circumstances in which Bohinski attempted to resist arrest or flee the scene such that the use of force was reasonable under the circumstances. As an initial matter, it is disputed whether the initial seizure of Bohinski was lawful. Even if the Court were to assume that Bohinski resisted arrest, there is a factual dispute as to whether his resistance included the use of threats and/or violence. "The fact that police may be justified to use force against a fleeing suspect one second, does not necessarily mean that they are justified in using the same degree of force once that individual no longer poses a threat." *Peroza-Benitez v. Smith*, 994 F.3d 157, 171 n.7 (3d Cir. 2021).

Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could conclude that Bohinski initially complied with Defendant's instructions, attempted to run away, and attempted to disengage with Defendant after multiple instances of aggressions on the Defendant's part. *See Plaza-Bonilla v. Cortazzo*, Civil Action No. 07-2045, 2009 WL 605909, at *6 (E.D. Pa. Mar. 9, 2009) ("Having found genuine issues of material facts surrounding the threat of death or serious physical injury Plaintiff posed to Cortazzo or others, we cannot find that Plaintiff's mere attempt to evade arrest by flight justified the use of deadly force. Because the facts, taken in the light most favorable to Plaintiff, do not support a finding that Cortazzo's use of force was reasonable under the circumstances, we cannot grant Cortazzo summary judgment on that basis."); *see also Abraham*, 183 F.3d at 295 ("In short, the fact that a suspect attacked an officer, giving the officer reason to use deadly force, did not necessarily justify continuing to use lethal force.").

Fourth, the duration of the incident does not support either party. Neither party presented facts regarding how long the entire encounter between Defendant and decedent lasted. All that is known is that the time could be "measured in minutes." Finally, the extent of the injury inflicted—here, death—again weighs in favor of the Plaintiff.

In sum, genuine material factual disputes exist as to whether Bohinski's constitutional rights were violated by the Defendant's investigatory stop and subsequent deadly shooting. For example, genuine disputes of material facts exist regarding: (1) whether the use of deadly force was reasonable and necessary under the circumstances;

and (2) whether Bohinski posed a significant risk of death or seriously bodily injury to Defendant or others. The existence of those factual disputes leads the Court to conclude that summary judgment is inappropriate as the Court cannot conclude that, as a matter of law, Defendant's use of force was objectively reasonable or unreasonable under the circumstances. *See Santini*, 795 F.3d at 420. It is for the jury to decide whether the Defendant's conduct and use of force was objectively reasonable under the circumstances.

### Whether the Right Was Clearly Established

Having concluded that a reasonable jury presented with the factual circumstances of this case could find that Defendant's investigatory stop and subsequent shooting was unreasonable and in violation of Bohinski's Fourth Amendment rights, the Court must next turn to the second step in the qualified immunity analysis. The second step in the immunity analysis "addresses whether, if there was a wrong, such as the use of excessive force, the officer made a reasonable mistake about the legal constraints on his actions and should therefore be protected against suit." *Curley*, 499 F.3d at 207.

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 10, 136 S.Ct. 305, 193 L.Ed.2d 555 (2015) (quoting *Pearson v. Callahan*, 555 U.S. at 231). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (internal citation and quotation marks omitted). Moreover, "a

defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79,134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014).

"The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (citations omitted). "A defendant has the burden to establish that he is entitled to qualified immunity." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001)). "Moreover, it is well-settled that plaintiffs need not identify a case that is directly on point to demonstrate that the right at issue was clearly established." *Witters v. Smith*, __ F. Supp. 3d __, Civil Action No. 1:23-CV-1441, 2024 WL 2902145, at *4 (M.D. Pa. June 10, 2024) (citing *Ashcroft v. al-Kidd*, 563 U.S. 635, 640, 107 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). "It is sufficient to demonstrate that existing precedent has placed the statutory or constitutional question beyond debate." *Id.*

Here, the Court finds that Defendant has failed to satisfy his burden to demonstrate his entitlement to summary judgment on the basis of qualified immunity. Viewing the facts and inferences from those facts in the light most favorable to the Plaintiff, there is a genuine material factual dispute as to whether Defendant's initial seizure and subsequent use of deadly force was objectively reasonable under the circumstances.

In *Garner*, the Supreme Court discussed whether a police officer's shooting of a suspect constituted excessive force in violation of the Fourth Amendment. The Court held that:

> The use of deadly force to prevent escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. . . .
>
> It is not, however, unconstitutional on its face. Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Garner*, 471 U.S. at 11-12.

Moreover, at the time of incident in question, the law in the Third Circuit clearly established a prohibition on the use of excessive force by police officers in effectuating a seizure where, as here, the immediacy and necessity of the use of excessive and deadly force are disputed and questionable when the facts are viewed in the light most favorable to the Plaintiff. For example, in *Abraham*, the Third Circuit reversed the district court's grant of summary judgment to the defendants on the basis of qualified immunity. In doing so, the Third Circuit rejected the defendant's arguments that there was no genuine dispute of material fact and that the officer reasonably acted in self-defense. In *Abraham*, an off-duty

police officer shot and killed the decedent while he was trying to flee in his car after stealing clothes from a store. The officer testified that the decedent was a danger because he had attempted to run her over, which conflicted with other evidence in the record. Specifically, the Court focused on evidence from the scene, including a video, suggesting that the officer's recollection may not have been accurate and further found that "[a] reasonable jury could decide she embellished." *Id.* at 293; *see also id.* ("Based on that physical evidence, a reasonable jury could reject the witnesses' recollections as inaccurate."). "In sum, the undisputed facts are that [decedent] had stolen some clothing, resisted arrest, hit or bumped into a car, and was reasonably believed to be intoxicated. Given these facts, a jury could quite reasonably conclude that [decedent] did not pose a risk of death or seriously bodily injury to others and that [defendant] could not reasonably believe that he did." *Id.* "A passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect." *Id.* at 294.

Accordingly, the clearly established right may be defined as follows: whether decedent had a clearly established Fourth Amendment right to be free from excessive force in the form of three gunshot wounds that resulted in his death when he was initially compliant with the officer, potentially subject to a unreasonable seizure in the form of a *Terry* stop lacking reasonable suspicion, was chased into a river by that officer, and there is a genuine material factual dispute as to whether the decedent was armed at the time the Defendant used deadly force, and whether Defendant reasonably perceived that his life was

in danger. Again, it is undisputed that Defendant shot decedent dead. A reasonable jury may conclude that Defendant shooting of decedent was unreasonable based on the totality of the circumstances. These circumstances include, among other things, the lack of evidence recovered from the scene, which contradicts Defendant's testimony, the autopsy report showing that at least one of the bullets went through decedent's arm, the fact that Defendant admittedly slipped on the river rocks and injured his head to the point he was dizzy, losing consciousness, and his eyesight was impaired by blood, and the several officers' testimony that the investigation into the shooting was missing key facts that should have been sought (such as the size of the alleged rock allegedly used by decedent to strike Defendant and whether Defendant's injuries were self-sustained by his fall into the river and striking his head on slippery moss covered rock). *See Abraham*, 183 F.3d at 285 (police officer's testimony "is contradicted by the physical evidence showing that the bullet did not go through the front windshield, but entered from the side of the vehicle."). Or a reasonable jury could conclude that Defendant's shooting of decedent was justified, based on the totality of the circumstances. These facts and issues must be determined by a jury. Therefore, genuine material factual disputes exist concerning the reasonableness of Defendant's use of force which goes directly to the issue of qualified immunity.

Although Defendant asserts that his conduct did not amount to unreasonable and excessive force under the circumstances, and that he did not violate any clearly established law, there is plainly a factual dispute on these issues. Accepting Plaintiff's versions of the

27

fact as true, a reasonable officer could have concluded that Bohinski did not pose a threat that was sufficiently serious and immediate as to require chasing him into a rushing river and subsequently shooting him dead. "Because the facts to be determined are disputed and as such are the function of the jury," *Rivas*, 365 F.3d at 201, the Court cannot conclude, as a matter of law, that Defendant is entitled to summary judgment on the basis of qualified immunity. "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Curley*, 298 F.3d at 278; *see also Giles*, 571 F.3d at 327-28 ("Accordingly, because accounts of this critical event were controverted, on summary judgment it was improper to dismiss Giles' complaints against [the defendants] on the basis of qualified immunity."). The Court will therefore deny Defendant's motion for summary judgment with respect to Count III alleging unreasonable seizure and excessive force in violation of the Fourth Amendment.

## B. Pennsylvania State Law Claims

In Count I of the Complaint, Plaintiff asserts a claim against Defendant for battery under Pennsylvania state law. In Count VI Plaintiff brings a claim under Pennsylvania state law alleging false arrest.[9] Defendant seeks summary judgment on all claims under

---

[9] Count VIII is identified as a survival action and Count IX is identified as a wrongful death action under Pennsylvania state law. *See* 42 Pa. Cons. Stat. §§ 8301, 8302.

"Under Pennsylvania law, wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 504 (W.D. Pa. 2018). "Because wrongful death

Pennsylvania law, asserting that is Pennsylvania law provides him with sovereign immunity from these claims, *see* 1 Pa. C.S.A. § 2310, and that no enumerated exception to sovereign immunity applies. *See* 42 Pa. C.S.A. § 8522. More specifically, Defendant claims he is entitled to summary judgment because he was acting within the scope of his employment and, therefore, entitled to sovereign immunity of Plaintiff's state law claims.

Under Pennsylvania law, to prove battery requires that the Plaintiff "establish that a particular defendant intended to cause harmful or offensive contact to the plaintiff, or an imminent apprehension of such contact in plaintiff, and that such contact with plaintiff resulted." *Gruver v. Borough of Carlisle*, No. 4:CV 05-1206, 2006 WL 1410816, at *5 (M.D. Pa. May 19, 2006) (internal citation and quotation marks omitted). "It is well settled Pennsylvania law that a police officer is justified when making an arrest in committing what would otherwise be an assault and/or battery, provided the force used is reasonable." *Id.* (citing *Commonwealth v. Jayne*, 11 Pa. Super. 459 (1899)).

---

and survival actions are not independent claims, a plaintiff asserting these claims must assert some other independent, cognizable claims to survive a motion to dismiss the wrongful death and survival claims." *Id.*; *see also McCracken v. Fulton Cnty.*, Civil Action No. 3:10-CV-1063, 2020 WL 2767577, at *10 (M.D. Pa. May 28, 2020) ("These statutes do not create independent causes of action; rather, they are derivative in the sense that the substance of the claim derives from the injury to the decedent. . . [i]n other words, when no underlying tort has been pled, there can be no wrongful-death or survival action." *Id.*

Because there are disputed material facts as to whether Defendant was acting within the scope of his employment, and those facts should be decided by a jury, it is inappropriate to dismiss the wrongful death and survival action at this stage of the proceeding. Moreover, it is well-settled that a "viable § 1983 claim can serve as the underlying cause of action supporting a wrongful death or survival action." *Duvall*, 447 F. Supp. 3d at 338.

"Under Pennsylvania law, the tort of false arrest requires a showing of either '(1) an arrest made without probable cause, or (2) an arrest made by a person without privilege to do so.'" *Boardman v. City of Philadelphia*, 661 F. App'x 183, 187 (3d Cir. 2016) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 295 n.2 (1994)).  Put another way, because Pennsylvania law treats both false arrest and false imprisonment similarly, "[t]he elements of false arrest/false imprisonment are : (1) the detention of another person (2) that is unlawful." *Luck v. Mount Airy No. 1, LLC*, 901 F. Supp. 2d 547, 555 (M.D. Pa. 2012). The crux of the claim is whether any arrest was based upon probable cause.  *Id.*

As to both causes of action, Defendant seeks summary judgment based on sovereign immunity.  "The Commonwealth of Pennsylvania generally immunizes state employees from suit, subject to just ten enumerated exceptions, none of which apply here." *Witters*, 2024 WL 29021, at *5 (citing 1 Pa. C.S.A § 2310, 42 Pa. C.S.A. § 8522(b)).  "The factors a court must consider to resolve the scope-of-employment question include whether the conduct: (1) was of a kind and nature that the individual was hired to perform; (2) occurred within authorized time and space limits; and (3) was motivated by the purpose to serve the individual's employer." *Id.*  "Employees operate outside the scope of their employment when they act in an outrageous or whimsical manner." *Id.*  "For instance, although certain employees might be expected to use force to achieve an authorized result, if they use more force than necessary, or if they are motivated by personal animus, their actions might lack a sufficient nexus with the business of the employer." *Id.*

"Because sovereign immunity is an affirmative defense ... the defendant carries the burden ... of proving that his conduct was within the scope of his employment. However, whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury." *Hill v. Harry*, No. 1:21-cv-01424, 2023 WL 6522400, at *28 (M.D. Pa. Oct. 5, 2023) (internal citation and quotation marks omitted). Indeed, it is well-settled under Pennsylvania law that where, as here, there is a genuine material factual dispute as to whether Defendant was acting within the scope of his employment, that is a question that must be decided by the jury. *See Justice v. Lombardo*, 652 Pa. 588, 606, 208 A.3d 1057 (2019) ("We have long held that whether a particular act of an employee is within the scope of his employment is ordinary a question of fact for the jury."). Where, as here, "more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury." *Id.* at 610.

Accordingly, the Court rejects Defendant's assertion that he cannot be held liable for battery or false arrest because he was acting within the scope of his employment at the time in question. "A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest was excessive, . . . . It is conceivable that a jury could find a police officer liable for those torts under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force." *Brummell v. City of Harrisburg*, Civil Action No. 1:09-CV-01816, 2010 WL 3896382, at *4 (M.D. Pa. Sept. 30, 2010) (internal citation and quotation marks omitted). There are

genuine material facts in dispute as to the reasonableness of the force used by Defendant, and whether reasonable suspicion and/or probable cause supported the seizure/arrest of Bohinski. Therefore, Defendant's motion for summary judgment with respect to Counts I, VI, VIII, and IX is denied because a reasonable jury could conclude that Defendant Lupacchini was acting outside the scope of his employment during his encounter with the decedent on October 24, 2017.

### C. Plaintiff's Motion for Partial Summary Judgment

Having considered Defendant's motion summary judgment, the Court now addresses Plaintiff's motion for partial summary judgment. (Doc. 76). Plaintiff seeks partial summary judgment on two issues. First, Plaintiff argues Defendant "may not raise Mr. Bohisnki's alleged intoxication as a defense as a matter of law." (Doc. 78 at 4). Second, Plaintiff further seeks partial summary judgment and states that there are no issues of material fact concerning Defendant's violation of the Pennsylvania Fish & Boat Commission policies.

As to first, the Court agrees with Defendant that Plaintiff's motion is essentially a motion *in limine* disguised as a motion for summary judgment. Accordingly, Plaintiff's motion for partial summary judgment seeking to preclude Defendant from raising the decedent's alleged intoxication is denied. Plaintiff may properly raise this issue prior to trial in a motion *in limine*. *See Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) ("Unlike a summary judgment motion, which is designed to eliminate a trial in cases

where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.").

Similarly, the Court cannot grant summary judgment to the Plaintiff on the issue of Defendant's compliance, or lack thereof, with Pennsylvania Fish & Boat Commission policies. Although it is true that Plaintiff's submitted an expert report relating to this, and other issues, the Court need not consider the Report of Dr. Roy Bedard at this stage of the proceeding. Viewing the evidence in the light most favorable to the Defendant, a reasonable jury could conclude that Defendant did in fact comply with relevant policies based on his and other officer's testimony. Equally clear is that a reasonable jury could conclude otherwise. This is a disputed factual issue and is inappropriate to resolve on summary judgment.

## V.    CONCLUSION

For the foregoing reasons, both the Plaintiff's and the Defendant's motions for summary judgment will be denied. A separate order follows.

Robert D. Mariani
United States District Judge